# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY KIMMEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:21-cv-00695 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT OF ) | MAGISTRATE JUDGE HOLMES |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Metropolitan Government of Nashville and Davidson County's ("Metro") Motion for Summary Judgment (Doc. No. 25). Plaintiff Kimberly Kimmel ("Kimmel") filed a response in opposition (Doc. No. 28) and Metro filed a reply (Doc. No. 36). For the reasons discussed below, Metro's motion will be **GRANTED** in part and **DENIED** in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kimmel was hired as a Literary Teacher Development Specialist ("LTDS") at East Magnet High School ("East") in spring 2017 for the 2018-2019 school year. (Doc. No. 29 ¶ 1). Kimmel is a white female. (Doc. No. 37 ¶ 1). Dr. Jamie Jenkins was the executive principle at East. (*Id.* ¶ 3). Jenkins is African American. (*Id.*). In June 2019, Kimmel, Jenkins, and other faculty from East went to Atlanta for a work conference. (Doc. No. 29 ¶ 6). During that trip, Jenkins texted Kimmel and invited her to a movie, followed by dinner and drinks. (*Id.* ¶ 10). Kimmel declined the invitation. (Doc. No. 29 ¶¶ 8-10).

When faculty and staff returned to East for the 2019-2020 school year on August 2, 2019, Jenkins stated: "Look around the room. What do you notice about all the new hires? They look

like me. They look like our administration. And most importantly, they look like the students." (Doc. No. 37 ¶ 12).

On December 9, 2019, Kimmel was scheduled to meet with assistant principal Danette Warren ("Warren") for a bi-weekly "literacy check-in" meeting. (Doc. No. 37 ¶ 25). Kimmel emailed Warren asking to reschedule and included third-party Amanda Kail, the president of a teacher union of which Kimmel was a member, on the email. (*Id.* ¶¶ 22, 25). Warren showed Jenkins the email, and Jenkins texted Kimmel to come to his office. (*Id.* ¶ 26). Jenkins met with Kimmel and informed her that he was very disappointed in her, she should have kept her issues in-house, she had hurt his feelings, he no longer trusted her and questioned her loyalty, she obviously no longer wanted to work at East, and he questioned whether he still wanted her on his team. (*Id.* ¶ 27). Jenkins was primarily upset because Kimmel complained to a third-party outside of East. (*Id.* ¶ 28).

On December 16, 2019, Kimmel submitted a complaint to Metro's Director of Employee Relations alleging sexual harassment, retaliation and racial discrimination against Jenkins and Warren. (*Id.* ¶ 30). Kimmel's complaint alleged that because she refused Jenkin's invitation to go to a movie, dinner, and drinks with him in Atlanta in June 2019, she had been subjected to a hostile environment and retaliated against. (*Id.*).

Metro conducted a formal investigation and placed Jenkins on leave pending the results of the investigation. (*Id.* ¶ 31). Metro ultimately determined that Kimmel's complaints were unsubstantiated, and Jenkins returned to work on January 27, 2020. (*Id.* ¶¶ 33, 35). Metro gave Jenkins a counseling memo as a result of Kimmel's complaint and directed him to not have any conversations with Kimmel at work without someone else present. (*Id.* ¶ 36).

The school district announced that beginning in the 2020-2021 school year, the LTDS position would no longer be mandatory. (Doc. No. 29 ¶ 22). Schools still had the same funding for LTDS positions, but principals had discretion to use the funds on a different position if necessary. (Doc. No. 37 ¶ 38). On March 31, 2020, Jenkins informed Kimmel that her position was being eliminated for the 2020-2021 school year, but that she could remain as an English teacher with a $1,000 stipend for Literacy Lead. (*Id.* ¶ 42). Kimmel turned down the offer because she preferred a full-time LTDS position. (Doc. No. 29 ¶ 29).

Kimmel filed this action against Metro on September 3, 2021, alleging claims of gender discrimination, race discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. On April 10, 2023, Metro moved for summary judgment on each of Kimmel's claims. In her response, Kimmel conceded dismissal of her claims of gender discrimination and sexual harassment. Kimmel did not respond to Metro's argument that the § 1981 claim should be dismissed, and accordingly, the Court finds that Kimmel has also conceded dismissal of that claim. Accordingly, Metro's motion for summary judgment will be granted as to the claims of gender discrimination, sexual harassment, and § 1981. The only remaining claims before the Court are Kimmel's claims for race discrimination and retaliation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-

moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

**A. Race Discrimination**

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021). Here, the parties agree that Kimmel has asserted a reverse discrimination claim. "Where a member of the majority group claims discrimination … the Sixth Circuit has modified the first and fourth prongs of the analysis." *Carr v. Metro. Govt. of Nashville and Davidson Cnty., Tennessee*, No. 3:16-CV-00002, 2018 WL 3416695, at *2 (M.D. Tenn. July 13, 2018) (internal citation omitted). To meet the first prong, a

4

plaintiff must "demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (internal citation omitted). To meet the fourth prong, a plaintiff "must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Id.* (internal citation omitted).

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for their decision. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021). The burden then shifts back to the plaintiff to show that the reason the employer gave "was not its true reason, but merely a pretext for discrimination." *Id.* (internal citation omitted).

1. Adverse Employment Action

In the context of a Title VII discrimination claim, an "adverse employment action" is defined as a "materially adverse change in the terms or conditions of employment" and "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (internal citations omitted).

Metro argues that Kimmel's discrimination claim fails because she cannot establish that she suffered an adverse employment action. Specifically, Metro argues that Plaintiff has failed to establish that the English teaching position with a literacy lead stipend had a materially different salary or work hour changes. However, Metro concedes that the elimination of the LTDS position "could possibly rise to the level of materially adverse employment action." (Doc. No. 26 at 12).

In response, Kimmel argues that eliminating her LTDS position and offering her an English teaching position constitutes an adverse employment action because there is a significant

5

difference in employment status, responsibilities, and pay between LTDS and English teacher positions. (Doc. No. 28 at 13). Viewing the facts in the light most favorable to Kimmel, the Court finds that a genuine issue of material fact exists as to whether Kimmel was subjected to an adverse employment action.

    2. <u>Discharge For Impermissible Reason</u>

The Sixth Circuit has recognized that "[a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990). The determination of whether an employee's job was eliminated turns on whether another employee absorbed the terminated employee's duties in addition to other duties, or if another employee is hired or reassigned to perform the plaintiff's duties. *Id.* If an employee's termination arises as part of a work force reduction, the Sixth Circuit requires a plaintiff to offer "evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465 (internal citation omitted). The heightened standard concerning a legitimate, non-discriminatory reason for the adverse employment action arguably merges the second and third steps in the burden-shifting analysis. This is true because a plaintiff, as is the case here, argues that the same facts can both meet that heightened burden for the second step and support a finding of pretext, the third step. That observation aside, the Court will address each step in turn.

The parties agree that because Kimmel's position was eliminated, her discrimination claim is considered a "reduction in force" for purpose of Title VII. Metro argues that Kimmel cannot meet the higher reduction-in-force standard showing that Jenkins singled her out for discharge for impermissible reasons. Specifically, Metro argues that Kimmel's LTDS position was eliminated due to budget limitations and was not pretext for discrimination. Eliminating a position because of

6

budget limitations is a legitimate, nondiscriminatory explanation. *Terre v. Hopson*, 708 Fed. Appx. 221, 225 (6th Cir. 2017) ("SCS argues that it needed to eliminate seven teaching positions because of 'budgeting constraints' and found that Terre's economics position could be absorbed by other teachers and thus could be excessed. SCS thus meets its burden of showing a legitimate nondiscriminatory reason for the elimination of Terre's position.").

In response, Kimmel argues that she has presented additional evidence that Jenkins singled her out for discharge for impermissible reasons. Specifically, Kimmel argues that Jenkins was "methodically changing the makeup of the administration and faculty to be primarily African American" and relies on Jenkins' statements to: "Look around the room. What do you notice about all the new hires? They look like me. They look like our administration. And most importantly, they look like the students." (Doc. No. 37 ¶¶ 12, 15). Kimmel also alleges that Jenkins only interviewed African American candidates for the assistant principal position ultimately filled by Warren and that Jenkins only interviewed one White male for the Dean of Students position – whom Kimmel claims Jenkins told the hiring panel to disregard, that he was only being interviewed as a favor, and that they should not take him seriously. (*Id.* ¶ 17; Doc. No. 34 at 48:1-8). Viewing the facts in the light most favorable to Kimmel, the Court finds that a genuine issue of material fact exists as to whether Kimmel was discharged for an impermissible reason.

    3. <u>Pretext</u>

Metro argues that Kimmel has failed to rebut Metro's legitimate, non-discriminatory reason for eliminating her position. An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted).

To show pretext, Kimmel argues that funding for the LTDS position remained fully funded for the 2020-2021 year, but "the newly granted discretion to use the funds elsewhere provided Jenkins with the pretext to use the budget as an excuse" to eliminate Kimmel's position. (Doc. No. 28 at 17-18). Kimmel has also noted that there is evidence that funding was not Jenkin's true motivation. In support of this argument, Kimmel claims that Jenkins became "particularly upset" with her when she brought her complaints to a third party outside of East and that Jenkins emailed the Human Resource Business Manager the next day and inquired about the process for removing an LTDS. Based on the evidence in the record, the Court finds that a reasonable jury could determine that Metro's proffered reason was pretext for discrimination.

The Court finds that Metro has failed to establish the absence of a genuine dispute of material facts as to Kimmel's discrimination claim. Accordingly, Metro's motion for summary judgment will be denied as to the race discrimination claim.

**B. Retaliation**

To establish retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the defendant was aware of the protected activity; (3) the defendant took an action that was materially adverse to the plaintiff; and (4) there is a causal connection between the protected activity and the defendant's adverse action. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021).

Metro argues that there is insufficient proof of only the fourth element: a causal connection between Kimmel's protected activity and the adverse employment action. In response, Kimmel argues that she has demonstrated temporal proximity between submitting her complaint against Jenkins and the elimination of her position, which Kimmel alleges is sufficient to establish causation.

On December 17, 2019, Kimmel submitted her complaint alleging discrimination and retaliation against Jenkins. Jenkins was immediately placed on leave, and Kimmel asserts that less than ten days after Jenkins' return, he submitted his budget proposal indicating his decision to eliminate Kimmel's position.

The Court finds that a reasonable jury could conclude that the temporal proximity between Kimmel's protected activity and Jenkins' decision to eliminate her position is sufficient to satisfy a causal connection. Accordingly, Metro's motion for summary judgment will be denied as to Kimmel's retaliation claim.

An appropriate Order shall enter.

                                                            _____
                                                            WILLIAM L. CAMPBELL, JR.
                                                            UNITED STATES DISTRICT JUDGE